JEROME WALKER,

                Plaintiff,

v.                                                     Case No. 24-cv-553-pp

H. UTTER, *et al.*,

                Defendants.

**ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Jerome Walker, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On May 23, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $15.47. Dkt. No. 6. The court received that fee on June 11, 2024. The court subsequently received the balance of the filing fee. Dkt. No. 8. Because the filing fee has been paid in full, the court will deny as moot the plaintiff's motion for leave to proceed without prepaying the filing fee.

**II.     Screening the Complaint**

    A.     <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v.

2

Case 2:24-cv-00553-PP     Filed 11/05/24     Page 2 of 12     Document 9

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff sues the following defendants who were employed at Green Bay Correctional during the relevant time: H. Utter, G. Trzebiatowski, C. Baier, Capt. Swiekatowski, J. Koehler, J. Perttu, R. Hofmann, M. Prebeg, RN Staeven, RN Recla and RN Matushak. Dkt. No. 1 at ¶2. The plaintiff also sues Dr. Eileen Gavin, who worked at Wisconsin Secure Program Facility (WSPF) during the relevant time. Id. at ¶3.

The plaintiff alleges that he has lumbar spondylosis and lumbar facet disease, and that he suffers from severe chronic back pain. Id. at ¶4. He states that he uses pain medication and a Transcutaneous Electrical Nerve

3

Stimulation (TENS) Unit. Id. at ¶5. In July 2015, while incarcerated at WSPF, a doctor at Waupun Memorial Hospital wrote that the plaintiff benefitted from the TENS unit and that he should use it as long as he needed it. Id. at ¶7. In August 2015, a nurse practitioner at WSPF wrote on the plaintiff's Offsite Service Request and Report that the plaintiff had special needs and, "Please allow patient a lower bunk use. TENS unit for lifetime." Id. at ¶9.

The plaintiff alleges that in October 2016, "HSU staff" took his TENS unit, claiming that he had altered it. Id. at ¶10. Over the next several months, the plaintiff allegedly complained of severe back pain and repeatedly asked for the return of the TENS unit. Id. at ¶11. The plaintiff states that he filed a lawsuit in federal court[1] (Walker v. Bonson, Case No. 17-cv-234 (W.D. Wis.)) in which he alleged that "Bonson took his TENS unit without consulting or examining him, and refused to return it for 69 days, even though she knew that he was in pain." Id. at ¶12. In that case, the court allegedly denied defendant Bonson's motion for summary judgment after which the parties settled the case. Id. at ¶13. The plaintiff states that he continued to have the use of his TENS unit for the rest of time he spent at WSPF. Id. at ¶14.

The plaintiff alleges that on August 28, 2019, he transferred to Green Bay. Id. at ¶15. The TENS unit the plaintiff had at WSPF allegedly followed him to Green Bay, "however it was taken by the Health Services Unit (HSU) and despite [the plaintiff's] many requests, it was not returned to him. [The plaintiff]

---

[1] The plaintiff says that he filed the lawsuit in the Eastern District of Wisconsin, but court records show that he filed it in the Western District.

was told his order had expired in May 2019." Id. at ¶16. The plaintiff states that the day he arrived at Green Bay, he wrote a health service request in which he asked that his TENS unit order be renewed, asked to be seen by the HSU and said that medical staff at WSPF knew that he had the TENS unit for life. Id. at ¶17. Defendant RN Steaven allegedly responded that there was no current order for the TENS unit and that the plaintiff was on the list to be seen by "ACP." Id. at ¶18.

The plaintiff alleges that on September 1, 2019, he wrote another health service request stating that he was in pain and "would like his TENS unit back right now," asking to be called to the HSU that day to see the doctor. Id. at ¶19. The next day, defendant RN Recla "stated that [the plaintiff] was scheduled with the 'MD in 10-11 days per intake. Please let HSU know if you would like a sick call.'" Id. at ¶20. The same day, the plaintiff allegedly wrote another health service request asking for his TENS unit and lower bunk, saying that he was to have those two things for life, that he had had them for four years at WSPF and that he had won a lawsuit about having them. Id. at ¶21. The plaintiff states that Recla responded that "she was sending it to the special needs committee." Id. at ¶22.

The plaintiff alleges that on September 14, 2019, he wrote an inmate complaint about not having his TENS unit in which he described his pain as "unbearable and excruciating." Id. at ¶25. He also said that he had been seen in the HSU, but that they still had not returned his TENS unit. Id.

5

The plaintiff alleges that on September 15, 2019, he wrote two health service requests. In the first one, he allegedly reiterated that he was in a lot of pain and needed his TENS unit; in the second one, he said he had pain in his back ("1 to 10 it is a 20") and needed to be seen right away. Id. at ¶¶26, 28. The next day, defendant RN Matushak allegedly responded to both requests. In response to the first request, Matushak said that the plaintiff's request was forwarded to the special needs committee. Id. at ¶27. In response to the second request, Matushak allegedly said that the plaintiff was scheduled to be seen by "the ACP" in the HSU. Id. at ¶29.

The plaintiff alleges that on September 17, 2019, he was seen by the ACP[2] at which time the doctor wrote an order for the plaintiff to have a TENS unit. Id. at ¶30. Six days later, Matushak received a health service request from the plaintiff in which he asked when he was going to receive his TENS unit that had been ordered. Id. at ¶31. Matushak allegedly scheduled the plaintiff for a sick call. Id. at ¶32.

The plaintiff alleges that on September 27, 2019, he wrote a health service request stating that he had received his TENS unit two days ago (September 25) but that one of the wires was missing. Id. at ¶33. He says he received a response three days later stating that the wire was "present and working." Id. at ¶34.

---

[2] Likely "advanced clinical practitioner."

Almost two years later, on September 15, 2021, the special needs committee allegedly renewed the plaintiff's order for "lower bunk, TENS and theraband for 1 year." Id. at ¶35.

The plaintiff alleges that about one year after that, on September 12, 2022, he wrote to the HSU stating that he wanted to renew his one-year prescription for the theraband, TENS unit and low bunk restriction. Id. at ¶38. Three days later, the special needs committee allegedly approved the renewal of the low bunk but denied the request for the TENS unit and theraband, stating that the plaintiff had refused a "PT visit." Id. at ¶39. The plaintiff states that on October 6, 2022, he wrote an inmate complaint based on the special needs committee's denial of his TENS unit and theraband without his ever being seen by HSU. Id. at ¶40. The plaintiff's inmate complaint allegedly was rejected as moot because the plaintiff was given back his TENS unit on October 17, 2022, by which time he had been without his TENS unit for thirty days. Id. at ¶43.

The plaintiff claims that defendant Dr. Gavin (who worked at WSPF) failed to renew the plaintiff's order for his TENS unit before the plaintiff was transferred to Green Bay although she knew, or should have known, that the previous order had expired. Id. at ¶45. This allegedly caused the plaintiff to go from August 28, 2019 until September 30, 2019 without a properly working TENS unit, during which time he was in constant pain. Id.

The plaintiff claims that defendants Staeven and Recla knew that he was experiencing constant back pain but scheduled him to see the doctor at the regular intake appointment of "10-11 days." Id. at ¶46. He claims that

7

defendant Matushak knew—when she received his health service request on September 23, 2019, informing her that he now had an order for a TENS unit and asking when he would get it—that he had been having back pains when she scheduled him for an appointment for September 26, 2019, forcing the plaintiff to endure an additional three days of pain. Id. at ¶47.

The plaintiff claims that defendants Utter, Trzebiatowski, Baier, Swiekatowski, Koehler, Perttu, Hofmann and Prebeg were members of the special needs committee who, on September 15, 2022, denied the renewal of the TENS unit and theraband without the plaintiff ever having been examined or assessed by HSU staff prior to the denial, even though they knew he needed these items to help with his pain management for his back. Id. at ¶48.

The plaintiff claims that the defendants' actions amounted to deliberate indifference to serious medical needs in violation of the Eighth Amendment. Id. at 7-8. He seeks compensatory, punitive and nominal damages. Id. at 8-9.

C.  Analysis

The statute of limitation for cases brought under §1983 is "the statute of limitations for personal injuries supplied by the state in which the claim arose." Huber v. Anderson, 909 F.3d 201, 207 (7th Cir. 2018) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007)). The limitation period for §1983 cases arising in Wisconsin for causes of action accruing on or after April 5, 2018 is the three-year limitation period mandated by Wis. Stat. §893.54 (2018). Federal law determines that the accrual date of a cause of action occurs when "the plaintiff has a 'complete and present cause of action,' . . . that is, when 'the plaintiff can

8

file suit and obtain relief.'" Huber, 909 F.3d at 207 (quoting Wallace, 549 U.S. at 388). A §1983 claim accrues when the plaintiff knows or should have known that his or her constitutional rights have been violated. Kelly v. City of Chicago, 4 F.3d 509, 511 (7th Cir. 1993).

The statute of limitation bars any claims that the plaintiff may have against defendants Steaven, Recla, Matushak and Gavin. The plaintiff's allegations against these defendants involve actions that occurred in 2019; applying the three-year limitation period, he would have had to file suit against them in 2022 to bring a timely claim. The plaintiff filed this case on May 6, 2024, well outside the applicable three-year statute of limitation for his allegations against those defendants. The court will dismiss them.

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal, 851 F.3d at 720-21 (citing Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Id. at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference

9

standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the individual's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

The plaintiff may proceed on an Eighth Amendment claim against the members of the special needs committee—defendants Utter, Trzebiatowski, Baier, Swiekatowski, Koehler, Perttu, Hofmann and Prebeg—who allegedly denied him the TENs unit on September 15, 2022. These defendants allegedly knew that the plaintiff needed the TENs unit for pain management and because of their actions he did not have it for over a month. The plaintiff may proceed against them in their individual capacities.

### III. Conclusion

The court **DENIES AS MOOT** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DISMISSES** defendants Staeven, Recla, Matushak and Gavin.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Utter, Trzebiatowski, Baier, Swiekatowski, Koehler, Perttu, Hofmann and Prebeg. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

10

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[3] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 5th day of November, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**